## PEOPLE v. WAH LEE MON.

### (*Supreme Court, General Term, First Department.* March 13, 1891.)

1. ABDUCTION—EVIDENCE.

   At the trial of a Chinaman for taking, harboring, and receiving for the purpose of sexual intercourse a female under 16 years, complainant testified that she had intercourse with defendant at Providence, R. I., where they resided; that he persuaded her to accompany him to New York for two days; that they took the same train, defendant purchasing the tickets, but neither speaking to the other until they reached New York, where they entered a cab together, the driver of which drove them to the police station. Said driver testified that defendant engaged him to drive to Mott street, the Chinese quarter, and asked the charge for taking two men. The police captain testified to defendant's statement that he was taking complainant to her sister, who was his wife. Defendant's wife did not reside in Mott street, and was not complainant's sister. Defendant attempted to show that he did not know that his wife had moved since he was last in New York, but admitted on cross-examination that she had lived at her present address for six months prior to his arrest. *Held*, that the evidence justified the inference that defendant's intent was to take complainant to some place for the purpose of sexual intercourse.

2. SAME—EVIDENCE OF FORMER ACTS.

   Evidence of complainant as to what occurred at Providence was competent to characterize the subsequent conduct in New York.

3. JURY—COMPETENCY.

   A juror stated on his *voir dire* that he had formed an opinion as to the guilt or innocence of defendant from what he had read in the newspapers which it would require strong evidence to remove; but he subsequently declared that the opinion or impression which he had would not influence the verdict, and that he would decide the question involved upon the evidence uninfluenced by anything else whatever. *Held*, that he was competent to serve.

Appeal from court of sessions, New York county.

This is an appeal by John Wah Lee Mon from his conviction of the crime of abduction.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*W. C. Beecher,* for appellant. *M. Semple,* for the People.

VAN BRUNT, P. J. The defendant was charged by the first count of an indictment with the taking, harboring, and receiving for the purpose of sexual intercourse a female named Lizzie Scott, not his wife, and under the age of 16. By the second count he was charged with taking, harboring, and receiving for the purpose of prostitution the said female. This last count was withdrawn on the trial, and the case was submitted to the jury upon the first count only. The defendant is a Chinaman. He owned a laundry in Providence, R. I. He had married a white woman, who was a dressmaker by trade, and resided in New York city. Her husband was in the habit of coming at intervals to see her, and she in like manner went to Providence to see him. Lizzie Scott lived in Providence, and resided with her mother, and was between 14 and 15 years of age on the day mentioned in the indictment as the date of the crime charged. She had been acquainted with the defendant

some little time before, and had sexual intercourse with him in Providence. The complainant testified that the defendant invited her to accompany him to New York city. promising her a silk dress, diamonds, and rings, and everything she wanted; and that she could return in two days, and say she had been to an aunt's; that thereupon the complainant consented to accompany the defendant for a trip to New York, and on Saturday, the 14th of June, the defendant bought two tickets to New York,—one for her and one for himself; that they both took the same train from Providence to Stonington, and the same boat from Stonington to New York; that they did not speak to each other while on the boat; and that before leaving Providence he gave her a ring, and told her to say that she was 17 years of age, and was his wife, and to wear the ring as her wedding ring; that upon the arrival of the boat at the pier in New York both went ashore without speaking, the defendant walking about four feet ahead of her; that thereupon the defendant engaged a cab, and the complainant walked along the streets, the defendant and the cab following. Subsequently the driver stopped, and the defendant beckoned the complainant into the cab, and, as she got in the driver asked her if she knew where she was going, and she told him she did not. The defendant got in himself, pulled down the curtains, and told the driver to drive to 11 Mott street. The complainant further testified that she did not know anybody at Mott street, and had no relatives or friends there. The driver, being suspicious, much to his credit, instead of taking them to Mott street, went to the police station, where the defendant was arrested. The complainant further testified that at the police station she stated, and that it was true, that the defendant did not tell her he was going to take her to a place for sexual intercourse, and that she did not intend to go to any place for sexual intercourse in New York city, and that she did not come here for that purpose. To corroborate the testimony of the alleged abducted female as to what occurred between the defendant and herself after they arrived in New York the people produced as a witness the driver of the cab, who testified to substantially the same effect as the complainant, except that the defendant, in engaging him, asked him what the charge would be for taking two men to Mott street. He also testified, not that the defendant pulled the curtain down, but that he pulled the curtains of the cab down. The captain of police testified that he was at the station house at the time the cab brought them there, and had some conversation with the defendant, who said that he was taking the complainant to see her sister, who was his wife. It further appeared that his wife did not reside at 11 Mott street, and that the complainant was not her sister; and, from the testimony of the defendant himself, that he knew the complainant when they came to New York together; that he told the cabman to drive to Mott street; that he did not go to Oliver street, where his wife lived, because he must have been crazy at the time, and that he was never crazy before; and that he was taking the complainant to his wife, to become a dressmaker. It further appeared that the defendant's wife had once lived in Monroe street, but that she had lived at 42 Oliver street from six to nine months at the time of the happening of this occurrence; and the defendant attempted to make it appear that he did not know where his wife had moved to, and that when he was last in New York she had lived in Monroe street. But in his cross-examination he swore positively that for six months prior to the time of his arrest she had lived at 42 Oliver street, which was pretty good evidence that his story about his not knowing where she lived was a mere fabrication. He also denied having had intercourse with the complainant. It is urged that the reception of evidence as to criminal acts beyond the jurisdiction of this state was error; that a crime, to be recognized by our courts, must be committed in this state; and that the complainant should not have been allowed to testify as to what occurred in Providence. It is undoubtedly true that what occurred in Providence could not be the basis of an indictment in this state; but evidence

of the previous relations of the parties was entirely competent in order that the subsequent acts committed in this state might be thereby characterized. The intent with which the defendant was inducing this girl to come with him might very well be deduced from their previous relations, or at least the proof of such intent might be very much strengthened by showing what had been their previous relations; and, although it was not a necessary part of the proof on the part of the people, it was a circumstance to be considered by the jury in determining the guilt or innocence of the defendant.　The claim that there was no corroboration of the complainant's evidence as to any act of immorality, or of any request or inducement on the part of the defendant to come to New York, might be well founded but for the fact that she did come with him; that they had had previous acquaintance with each other; that at his solicitation she entered the cab; that he gave an erroneous address for no honest purpose which has been disclosed by the evidence; that when arrested he made false statements as to the relation of the girl to himself and the object he had in inducing her to enter the cab; and throughout the evidence of the defendant shows all the marks of guilty intent, from which the jury might very well conclude that the claim of the people was entirely true; and it would seem to us, upon reading the testimony, that no other conclusion could be arrived at than that the charge was well founded, and that defendant's intent in inducing the girl to enter this cab was to take her to some place for the purpose of sexual intercourse.　Ample corroboration seems to have been afforded by the testimony of the defendant himself, from which the jury were not only authorized to infer, but could not resist the inference, that he was seeking to get this girl into his possession for improper and immoral purposes.

There is a further objection made to the ruling of the court in overruling the challenge to the juror who said that he had not only formed an opinion as to the guilt or innocence of the defendant from what he had read in the newspapers, but he believed it would require strong evidence to remove that opinion.　If the examination of the juror had remained here undoubtedly the challenge should have been sustained.　But in his cross-examination he stated—which no doubt was the fact—that if he did not hear further evidence on which he could rely he would keep the same opinion; but he thought his information from reading would not affect his judgment; that he would try to forget what he had read, and rely on the testimony; and that he believed his opinion or impression would not influence his verdict, and that he could render an impartial verdict on the evidence.　And upon further examination by defendant's counsel the witness said: "Of course, I have an opinion now which it would require evidence of a strong nature to remove. I would enter the case with an opinion.　As the case progressed I would still have an opinion until I received evidence to the contrary."　And in answer to a question from the court he said that if he went into the jury-box, and did not hear any evidence at all, he would not convict on that opinion, because it might be false, for all he knew, and that he knew he would be bound by the proof as furnished by the witnesses; and finally, upon being asked the question, "Can you then decide upon the testimony you hear in court uninfluenced by anything else whatever?" the juror answered, "I believe I would."　We think under the provisions of the Code of Criminal Procedure the court was justified in overruling the challenge and accepting the juror, he having declared on oath that the opinion or impression which he had would not influence the verdict, and that he would decide the question involved upon the evidence, uninfluenced by anything else whatever.　The judgment should be affirmed.

All concur.